Mr. Justice Cox
delivered the opinion of the Cpurt;
This is an action against the Baltimore & Ohio Railroad Company for maintaining a nuisance by an illegal use of the street in front of the premises of the plaintiff. The residence of the plaintiff is on First street, east, between I and K streets, in the vicinity of what is called the Y, or bend, which connects the Metropolitan Branch of the Baltimore & Ohio Railroad with the original line of the road.
The complaint is that the defendant was in the habit, between June 3, 1883, and June 3, 1884, of parking or storing its cars on the sidings and main tracks on the street at *364 this point, and leaving them there for an unreasonable length of time, and making use of the street for the purpose of making up its trains; the consequence of which was that smoke and cinders from the engines, and unpleasant odors from the cars left standing on the tracks, sometimes cattle cars, found their way into the dwelling of the plaintiff, to the no small discomfort of himself and his family.
There was evidence offered on both sides — contradictory evidence — as to the facts. There were also instructions asked on both sides, and the case resulted in a verdict for the plaintiff, for the sum of $500. A motion was made for a new trial on all the customary grounds, which was overruled, and an appeal taken from that order to this court.
In the argument in this court, the only contention, substantially, is as to the propriety of the granting of one of the instructions which was given at the instance of the plaintiff, and the failure to explain it away in the charge of the court if it is erroneous.
By virtue of an act of Congress of March 3, 1835, and a subsequent agreement with the corporation of Washington, the Baltimore & Ohio Railroad Company acquired the right to enter the city of Washington and construct its original road upon its present location, and establish its station at its present site. By subsequent legislation, the Metropolitan Branch was also authorized.
It is difficult for a court, unfamiliar with railroad management, to define the use of the street which may be considered as necessarily incident to the privilege thus conferred. We have hertofore undertaken to point out some of the limitations to which it must be subject. Thus, in Neitzey vs. The Baltimore & Potomac Railroad Company, 5 Mackey, 34, we held that the Baltimore & Potomac Railroad Company could not use the street for the purpose of loading and unloading its cars, because it would be converting the street into a freight yard. The same 'rule, of course, is applicable to the present defendant.
In the case of Hopkins vs. Baltimore & Potomac Railroad *365 Company, 6 Mackey, 311, we held that that company was not authorized to use Maryland avenue, one of the streets in the city, as a general shifting ground for making up trains, and that the only use which could properly be made of the street for shifting cars was such as was “ reasonably necessary for the purpose of carefully taking its cars into, or of carefully taking its cars out of the station, to place them in freight trains on the track.”
And in the present case, on a former hearing in this court, we held that sidings and the main track in the street could not be used for parking cars and for coupling and shifting cars generally, and overruled the decision at a special term that they might be used as side tracks are ordinarily used for the purposes mentioned. We held that while that might do in the country, the streets of a city could not be used in that way.
It may be proper, on the present occasion, to state somewhat more fully to what extent we are prepared to recognize the railroad company’s right to use the street otherwise than in the mere process of passing over it, in the act of transporting passengers or freight.
The present station is confined to square 632. It cannot be enlarged except by both acquiring additional private property, and enclosing public streets, neither of which the company is now authorized to do. But it is not only probable, but plainly apparent, that the freight trains which it is necessary to make up for the proper conduct of the company’s business cannot be made up within the limits of the station; that the cars have to be stored on different tracks in the station, and in making up a train it may be necessary to pull out the cars from one track, then to back on to another, and connect with the cars on that, and so on; and to pursue the reverse of this course in conveying the cars of a long train into the station. This necessarily involves a temporary use of the street adjacent to the station, for the purpose of making or breaking up a train, in the manner mentioned, and to that extent, the authority so to use the *366 street would seem to grow out of the necessities of the case and to be a necessary incident of the right to use the road and station. As we said in Neitzey vs. Railroad Company, this would seem to be the very object of the tracks at or near the station, which are authorized in any number that the president and directors may deem necessary; and such was the use which we referred to in the case of Hopkins vs. the Baltimore & Potomac Railroad Company, as reasonably necessary.
But the moment that we go beyond this, we shall be completely at sea. If the mere expansion of the company’s business were sufficient to justify it in doing everything that might facilitate its management, then there would be no end to its encroachments on public and private interests. It could spread out from the station, as a center, to all points of the compass, occupying the streets in all directions for loading and unloading, parking and shifting cars, and making up or undoing trains, to the utter detriment of all the private property in the neighborhood. Of course, this is inadmissible, and the great development of the company’s business simply requires it to seek legislative sanction for the extension of its terminal facilities.
We have thus indicated in a somewhat general way the legitimate use to which we think the street could be put, but it would be impossible to foresee all the contingencies and circumstances which might require us to modify or extend these views. Accidental detentions or obstructions might change the situation.
But the use which we have spoken of as probably unavoidable, and therefore legitimate, would seem to be quite a different thing from placing and assembling cars on the sidings or main track in the street, for the purpose of shifting them and making up trains there, which seems to be the ground of complaint in this case.
And this leads us to consider the exceptions on the part of the defence to the rulings of the judge in special term.
The fifth instruction given at the plaintiff’s instance was:
*367 “ That if the jury believe from the evidence that on or near the residence of the plaintiff, from April 3, 1883, until April 3, 1884, the defendant maintained a side track called No. 4, and placed, or caused to be placed thereon, cars, loaded or unloaded, for a greater or shorter time, and made'up or shifted cars thereon, with the aid of engines under the control of conductors and other employees, and with fires of coal and steam, and that from such use of the sidings the plaintiff suffered inconveniences, annoyances and damages, he would be entitled to recover in this action.”
The criticism on this instruction is that it ignores, and negatives the right conceded in the Hopkins case to such use as may be reasonably necessary for the purpose of talcing 'the cars into and out of the station, especially as it applies to a use of the siding for any period of time — a greater or shorter time.
It is only due to the Justice who tried the case to consider to what kind of testimony this instruction was addressed. The evidence on the plaintiff’s part tended to show that cars were left’ standing -on the street near his house for long periods of time, and were there moved and shifted about and made up into trains. Indeed, the yardmaster of the company, himself, also testifies that there were some empty cars kept at First street, between I and K, and adds: “We did place empty cars on the west track.”
It is to this alleged case that the instruction seems directed. It condemns the placing, that is, the assembling of cars in the street, and the making up and shifting on the street. So understood, it does not clash with what we have heretofore said, and harmonizes with' what we now say, and does not seem obnoxious to the objection made to it.
If the instruction is not erroneous in itself, there was no error in the omission to modify or explain it into harmony with what we had previously held. It is complained that the jury were not instructed as to the reasonable use of the streets which' the Hopkins case justifies. But if that was necessary, the Justice has really only anticipated the fuller *368 expression which we., now attempt to give of the briefly outlined opinion in the former case as to the right to break up the trains in getting them into the station.
The sixth instruction asked on the part of the defendant was: “The jury are instructed that the defendant was entitled to use the tracks and sidings on First street between I and K streets, with its freight trains and cars and engines for such time as was reasonably necessary to place the same in the freight yard of the defendant.”
This instruction undertakes to give the law as laid down by us in the former case of Hopkins vs. The Baltimore & Potomac Railroad. As we read the record, this instruction was given subject, however, to a further explanation by the court, and that is the law of the case, unless, the explanation itself explains away the instruction.
The explanation in the charge of the court is as follows: “What I meant to say was, and what I do say is, that the defehdant railroad company had a right to have its tracks there. They had a right to run their cars over their tracks. They had a right to do any reasonable, proper thing there; as, for instance, suppose they should run down there some day to the entrance of the yard, and see the track obstructed by something in the yard, they would have the right to stop there a reasonable time, until they could get into the yard, undoubtedly. They would have a right to do that. Perhaps they would have a right to go back, or back and forward again, or cut their train in two and pull part of the train in and then go back and get the balance of it and pull it in; but while that is true, they had no right to use that street for the purpose of parking cars, as it is called, or storing cars or loading cars, or shifting cars, or making up trains — the work that belongs to station grounds, to depot grounds — they had no right to use that street for those purposes; and if they did do. that; if they made dp trains there, allowed cars to. stand there, stored them there, shifted them there, parked them there, or their engines, and the plaintiff suffered annoyance, inconvenience and damage because of *369 that occupancy, then the case is made out, and the plaintiff would be entitled to recover.”
We do not see .that what is called the explanation in the charge of the court affects the force of the instruction which was asked by the defendant and which was given with this explanation. The court went a little further and more fully into the question of what is a reasonable use of the street than we did in the Hopkins case; but we substantially say now what was said by the justice below on the trial.
We see no error, therefore, in this part of the instruction.
The eighth instruction prayed by the defendant asks somewhat too much. It claims the right to' the company to move one car at a time into the station, out of a train of whatever length, the effect of which would be a virtual appropriation of the street for an indefinite time, without the slightest necessity for it. It would, in effect, be offering a pretext to the company for occupying the streets, if it c.iuld take a whole train and move one car at a time only, into the station. What • is reasonable in the instruction, it seems to us, was substantially embodied in the charge of the court, which I have just read.
This disposes of all that is seriously contended for in argument on this appeal. We think that the order of the court below, overruling the motion for a new trial, must be affirmed.